# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELBA SUE JORDAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-06-117-SPS ) |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Melba Sue Jordan requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs*., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 17, 1949, and was 55 years old at the time of the administrative hearing. She has a high school education and previously worked as a clerk/cashier and receptionist. The claimant alleges she has been unable to work since April 8, 2002, because of degenerative disc disease, arthritis, high blood pressure, diabetes, and knee problems. The claimant was last insured on December 31, 2004.

## Procedural History

On August 19, 2004, the claimant filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. After a hearing on September 21, 2005, ALJ Michael Kirkpatrick found that the claimant was not disabled in a decision dated November 29, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a wide range of medium work, *i. e.*, lifting and/or carrying of 50 pounds occasionally and 25 pounds frequently,

standing and/or walking for at least six hours total in an eight-hour workday with normal breaks, and sitting for at least six hours total in an eight-hour workday with normal breaks. The claimant was further limited to only occasional stooping and climbing ramps and stairs and to no climbing of ladders, ropes, or scaffolds (Tr. 17). The ALJ concluded the claimant could perform her past relevant work as a cashier/checker and a receptionist (Tr. 27).

**Review**

The claimant contends that the ALJ erred: (i) by improperly evaluating the medical evidence; and, (ii) by improperly analyzing her credibility. In her first contention, the claimant argues that the ALJ improperly evaluated the opinion of her treating physician Dr. Tina Cooper, M.D. The Court finds this contention persuasive.

The record reveals that as early as March 1996, the claimant began complaining of arm and hand pain. She indicated she was experiencing pain in her right arm and hand which was keeping her from sleeping. The claimant had a full range of motion and her radial pulse was strong. She was prescribed Flexeril (Tr. 185). She continued to complain of achiness and pain in the hands in April 1996 and was assessed with chronic aching pain in the hands (Tr. 183-84). At her first visit with Dr. Cooper in November 1998, the claimant was assessed with conditions including arthritis and hypertension (Tr. 272). The claimant's arthritis was noted to be controlled on medication in June 2000 (Tr. 268). However, in November 2000, the claimant was having problems with arthritis in the left shoulder and her upper back (Tr. 266-67). At a visit with Dr. Cooper in June 2001, the claimant exhibited mild tenderness in

the right shoulder, lumbar spine, and over all the joints of the hands (Tr. 264), and in September 2001, the claimant complained of pain in her hands and indicated it "comes and goes." (Tr. 263). At her next appointment in January 2002, the claimant still complained of pain and also of numbness in the hands. X rays were normal and Tinel's sign was negative, but the claimant had a positive Phalen's sign. She was assessed with arthritis, wrist pain and numbness, and prescribed wrist splints (Tr. 262). In April 2002, the claimant continued to suffer from pain in her neck and lower spine and was assessed with degenerative disc disease of the neck and back (Tr. 261). The claimant complained of pain and stiffness in her back and neck and exhibited decreased range of motion in the neck and spasms in the cervical spine and along the lumbar spine. Physical therapy was suggested for the claimant's back (Tr. 256). By January 2004, the claimant described her back pain as somewhat better with physical therapy, but her pain remained at a five on a scale of ten. The claimant had left knee pain with mild effusion and positive patellar grind and tenderness all along the cervical and thoracic spines (Tr. 255).

When the claimant returned to Dr. Cooper in August 2004, her low back continued to be painful as well as her left knee. She exhibited crepitus of the left knee and tenderness over the lumbar region (Tr. 247). In November 2004, the claimant was noted to be suffering from pain in her back and hands from arthritis (Tr. 308). At a May 2005 visit, the claimant was still suffering back pain and wrist pain and numbness, and Dr. Cooper assessed her with degenerative disc disease, osteoarthritis, and bilateral carpal tunnel syndrome and prescribed

wrist splints bilaterally (Tr. 340). By August 2005, the claimant exhibited numbness in the hands and feet and pain in the knee, low back, and shoulder. She indicated that the weather sometimes caused her pain to increase. She was taking Tylenol 3 for pain. Dr. Cooper assessed the claimant with low back pain and carpal tunnel syndrome and again prescribed wrist splints bilaterally (Tr. 339).

On September 19, 2005, Dr. Cooper completed a medical source statement evaluating the claimant's physical abilities. She found the claimant could lift and/or carry ten pounds, stand and/or walk for four hours in an eight-hour workday and 30 minutes continuously, sit for four hours in an eight-hour workday and two hours continuously, and she did not need to lie down to manage her pain. Dr. Cooper determined the claimant could frequently feel; occasionally climb, stoop, handle and finger; but never balance, kneel, crouch, or crawl. She indicated her findings were based on the claimant's bad back with sciatica, degenerative joint disease of the knee and back, mild carpal tunnel syndrome, and pain. The period for the assessment was from November 1998 to September 2005 (Tr. 337-38).

The ALJ did not discuss the limitations imposed by Dr. Cooper on the medical source statement. This was because the ALJ determined that Dr. Cooper's opinions were not entitled to controlling weight. *See, e. g., Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that a medical opinion from a treating physician is entitled to controlling weight "if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."),

*quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. The ALJ gave the following reasons for this determination: (i) Dr. Cooper's assessment was based partly on diagnoses of bilateral carpal tunnel syndrome and sciatica, but there was no evidence in the record or in her treatment notes to support such diagnoses; (ii) her assessment was "an act of courtesy to a patient" and was "clearly based upon the claimant's subjective complaints"; and, (iii) her assessment was inconsistent with the other evidence in the record (Tr. 20-21). The ALJ's analysis was deficient for several reasons.

First, although the record does not appear to include a diagnosis of sciatica, there was ample evidence of a diagnosis of carpal tunnel syndrome in Dr. Cooper's treatment notes. As early as June 2001, the claimant exhibited joint pain in her hands (Tr. 264), and in May and August 2005, Dr. Cooper *diagnosed* the claimant with carpal tunnel syndrome and recommended she wear wrist splints (Tr. 339-40). The ALJ discussed these treatment notes but failed to mention the claimant's hand pain or the diagnosis of carpal tunnel syndrome. Both findings are consistent with the handling and fingering limitations imposed by Dr. Cooper in the medical source statement. The ALJ erred by picking and choosing what he discussed from Dr. Cooper's treatment records. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86) (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other

parts, is improper."). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion."), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).[2]

Second, the ALJ *assumed* that Dr. Cooper's medical source statement was prepared as "an act of courtesy to a patient of long-standing" and primarily based on the claimant's subjective complaints. This assumption was erroneous, particularly where there was nothing in the record to support it. *Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.'"),

---

[2] Although Dr. Cooper's May and August 2005 treatment records are from after the expiration of the claimant's insured status in December 2004, the records are still relevant to the ALJ's decision. *See, e. g., Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker*, 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris*, 644 F.2d 721, 723 n.2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.*, 463 F.2d 38, 41-42 (2d Cir. 1972); and *Berven v. Gardner*, 414 F.2d 857, 861 (8th Cir. 1969).

*quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original].

Third, the ALJ rejected Dr. Cooper's assessment because it was inconsistent with the findings made by the state agency physicians, who opined that the claimant could (as the ALJ found in the RFC) perform a wide range of medium work (Tr. 24). But the ALJ wholly failed to explain why he preferred the opinions of state agency physicians *who did not examine the claimant* over the opinion of her own treating physician. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. § 404.1527(d)(1)&(2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. This was particularly problematic because the agency physicians made their assessments prior to the preparation of the medical source statement by Dr. Cooper and therefore could not have taken it into account. Nor could they have taken into account any records of Dr. Cooper's treatment after their opinions were rendered.

Finally, before determining that Dr. Cooper's opinions were not entitled to "much weight," the ALJ was required to analyze the proper weight to give them under the factors set forth in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating

physicians opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using *all of the factors* provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 [emphasis added; quotation omitted]. Those pertinent factors are the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Here, the ALJ found that Dr. Cooper was the claimant's treating physician (although not a specialist) and that she saw the claimant infrequently and only provided treatment of modest dosages of prescription medication (Tr. 21). But the record reveals that the claimant was seen and examined by Dr. Cooper on numerous occasions and that in addition to prescribing the claimant medication, she recommended physical therapy for the claimant's back and wrist splints for her hands (Tr. 247-62, 256, 339-40). Further, in order for the ALJ to reject the opinion of a treating physician such as Dr. Cooper entirely, he was required to "give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 [quotations omitted]. This the ALJ failed to do.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of the opinions expressed by Dr. Cooper on the medical source statement. On remand, the ALJ should reconsider these opinions in accordance with the appropriate standards for evaluating a treating physician's opinion and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 14th day of September, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**